Matter of Richard II. v Stephanie JJ. (2018 NY Slip Op 04988)





Matter of Richard II. v Stephanie JJ.


2018 NY Slip Op 04988


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

524153

[*1]In the Matter of RICHARD II., Respondent,
v
STEPHANIE JJ., Appellant. (Proceeding No. 1.)
In the Matter of STEPHANIE JJ., Appellant,
v
RICHARD II., Respondent. (Proceeding No. 2.)

Calendar Date: April 30, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Michelle I. Rosien, Philmont, for appellant.
Susan B. McNeil, Ithaca, attorney for the children.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from an order of the Family Court of Schuyler County (Morris, J.), entered November 29, 2016, which, among other things, dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Stephanie JJ. (hereinafter the mother) and Richard II. (hereinafter the father) are the parents of two children, a daughter (born in 2008), who is hearing impaired and learning to communicate through American sign language, and a son (born in 2009). In October 2015, an order was entered granting the father visitation with the children for four hours every Sunday. [*2]Three months later, the father filed a violation petition alleging that the mother denied him visitation. Shortly thereafter, the mother filed a petition seeking modification of the October 2015 order by suspending the father's visits. Family Court ordered that the father's visitation be temporarily suspended. A fact-finding hearing and a Lincoln hearing were held and, ultimately, Family Court dismissed both petitions. As to the mother's petition, the court found that the mother failed to establish a change in circumstances. The mother now appeals. We affirm.
The mother, as the parent seeking modification of a prior order of visitation, has the "burden to first demonstrate a change in circumstances since the entry of the prior order to warrant the court undertaking a best interests analysis in the first instance" (Matter of Alan U. v Mandy V., 146 AD3d 1186, 1187 [2017] [internal quotation marks and citation omitted]; see Matter of Alexis EE. [Nadia EE.—Kenneth EE.], 153 AD3d 1056, 1057 [2017]). To that end, the mother was seeking modification on the basis that there was an open case against the father for sexual abuse of the daughter that was being investigated by Child Protective Services (hereinafter CPS).
At the fact-finding hearing, Jessica Manwaring, a teacher's assistant and sign language interpreter at the daughter's school, explained that the daughter communicates through sign language, which she was still learning, and that, if signs are unclear to her, she uses gestures. Manwaring testified that on a Monday in January 2016, the daughter came to school looking tired and told Manwaring that she had a bad weekend at her father's house, that her father was mean to her and that he was mad [FN1]. Manwaring additionally testified that, later that day, during a meeting with Katie Richardson, the school psychologist, the daughter disclosed that the father had touched her in her private area in the bathroom. Manwaring testified that the daughter stated that she was "screaming, crying and saying no, no, again and again and again." The daughter also stated that, while this was occurring in the bathroom, her brother was down the hall, in the living room, watching a movie. On cross-examination, Manwaring testified that, while the daughter cannot speak, she does make sounds and, if she were to scream, anyone else in the home could have heard it. Manwaring further testified that she attended an interview with the daughter, which took place later at the local child advocacy center, and that the daughter described the same event.
Richardson testified that she provided counseling to the daughter once a week as part of her individual education plan. Richardson explained that on Monday, January 11, 2016, the mother called her and told her that she was concerned about the father going into the bathroom with the daughter and that the daughter was reporting that it was making her uncomfortable. The mother also told Richardson that there was an open case with CPS against the mother and her paramour, but that the mother was not concerned. Richardson testified that she met with the daughter that same day, and Manwaring was present to translate the daughter's statements. During that meeting, she discussed the bathroom issue with the daughter, but no disclosure was made. Richardson testified that, at her meeting with the daughter the following week, the daughter made a disclosure about touching. Richardson did not give any other details in her testimony, specifically stating that she did not interview the daughter in detail because she is trained not to do so when CPS is involved so as not to compromise the disclosure.
Kelly McIntosh, a caseworker with the local social services agency, testified regarding [*3]two reports that she received in January 2016 regarding the daughter. McIntosh explained that the initial report regarding the daughter, which was received on January 6, 2016, "had to do with hygiene, some unexplained marks [and] bruising." McIntosh testified that she met with the daughter twice, once at the daughter's school the day that the initial report was received, and once at the child advocacy center on January 26, 2016, approximately a week after receiving the second report. McIntosh relayed that she observed the interview from another room and that the interview was recorded. McIntosh also testified that she spoke with the father, who denied the allegations, the father's paramour and the father's mother and stepfather, as many of the father's visits took place in their home. McIntosh also explained that she interviewed the son a few times and that he was not consistent throughout the interviews, but that he did not say anything about the father being in the bathroom with the daughter. Lastly, McIntosh testified that, at the time of her testimony in May 2016, the local social services agency did not intend to bring any proceedings against the father based upon these allegations.
The mother's testimony revealed that while she has some understanding of American sign language, she did not consider herself to be fluent. The mother explained that on January 10, 2016, after the daughter returned home from a visit with the father, the daughter signed to her the letter D, which means her father, and the words "in," "bathroom," "mad," "mean" and "watching." The mother also testified that, later that same evening, the daughter disclosed sexual abuse, but the mother could not remember specifically what she said. The mother testified that, the next day, she called Richardson and asked her to discuss it with the daughter. The mother also testified that she was the subject of a hotline report, the allegations of which were that her children were not being fed properly and that they were not clean, and that she did not know who made the report but that she assumed it was the father.
The father testified, without rebuttal, that he cooperated with the investigations by CPS and the police, consistently denied the allegations and was neither arrested nor was the report deemed founded. Testimony by the father's fiancee indicated that she was present during all of the relevant visits and, at one of the visits preceding the disclosure, she and the father noticed a circular bruise on the daughter's chin and that the son had a black eye. The father took pictures and filed a report with CPS, which prompted an investigation of the mother. The testimony also indicated that all of the visits took place in a small apartment, and that the bathroom, where the abuse is alleged to have occurred, was near the couch where the fiancee sat. The fiancee testified that, if someone entered the bathroom, she would "be privy to" it and she had never seen the father do so. Similarly, the father testified that he had never been in a situation to assist his daughter in the bathroom. "Thus, after reviewing the record, including the Lincoln hearing, and according deference to Family Court's credibility determinations and factual findings" (Matter of Bradley D. v Andrea D., 144 AD3d 1417, 1419 [2016] [citation omitted]), we find that Family Court's determination that the mother failed to meet her burden in establishing a change in circumstances is supported by a sound and substantial basis in the record (see Matter of Heather U. v Janice V., 160 AD3d 1149, 1151 [2018]; Matter of Smith v McMiller, 149 AD3d 1186, 1188 [2017]).[FN2]
Finally, to the extent that it was error to admit into evidence testimony that the father took a polygraph examination, the results of which were not admitted into evidence, such error was harmless as there was ample evidence to support Family Court's findings (see generally Matter of Daniel BB., 26 AD3d 687, 688-689 [2006]; Matter of Daniel R. v Noel R., 195 AD2d 704, 708 [1993]). To the extent not specifically addressed, the mother's remaining contentions have been reviewed and found to be without merit.
McCarthy, J.P., Lynch, Devine and Clark, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1:Unless otherwise noted, any references to communications made by the daughter were made through sign language.

Footnote 2:Inasmuch as the mother alleges that Family Court dismissed her petition because it applied the wrong standard of proof by stating that the evidence did not demonstrate definitively that the alleged sexual abuse occurred, we find that the evidence failed to demonstrate, by a preponderance of the evidence, sexual abuse of the daughter by the father (see Matter of Cid v DiSanto, 122 AD3d 1094, 1095 [2014]). Further, we note that there may be instances where the proof does not establish abuse by a preponderance of the evidence, nevertheless, a child's disclosure of abuse, together with other factors, may trigger a best interests analysis. We do not find such other factors to be present here, despite the attorney for the child's position to the contrary.